IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELE DORAN,                                  Case No. 3:13-cv-01008-MA

                Plaintiff,                OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

MERRILL SCHNEIDER
Schneider Kerr & Gibney Law Offices
P.O. Box 14490
Portland, OR 97293

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

GERALD J. HILL
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

MARSH, Judge

Plaintiff Michele Doran seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I reverse and remand for further administrative proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on August 5, 2009, alleging disability beginning March 15, 2007, due to bipolar disorder, borderline personality disorder, chronic back pain status post two surgeries, syncope, fibromyalgia, headaches, depression, anxiety, and post traumatic stress disorder (PTSD).

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held hearings on October 5, 2011, and January 5, 2012, at which plaintiff appeared with her attorney and testified. A vocational expert, Richard M. Hincks also appeared at the January 5, 2012 hearing and testified. On January 12, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and

therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1976, plaintiff was 35 years old on the date of the ALJ's adverse decision. Plaintiff completed school through the eleventh grade and has past relevant work as a waitress, caregiver, gas station cashier, service station attendant, fast food worker, and cable puller.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: alcohol dependence, marijuana dependence, and cocaine dependence in remission; a bipolar disorder; a borderline personality disorder; and chronic back pain. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform less than a full range of light work in that plaintiff can occasionally climb, stoop, crouch, crawl, and kneel; she is limited to simple, entry-level work; she should have no interaction with the public and can have occasional interaction with coworkers, but no team activities.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as hand packager, electronics worker, and small parts assembler. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from March 15, 2007 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate and include physical limitations described by examining physician John Ellison, M.D.; and (2) the ALJ failed to properly evaluate the opinions of examining psychologists Keli Dean, Psy.D. and Robert Duvall, Ph.D.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of

the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.    Standards for Evaluating Physician's Opinions

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.*

### II. Dr. Ellison

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of examining physician John Ellison, M.D.    On May 28, 2011, Dr. Ellison performed a comprehensive physical examination, interviewed plaintiff, and reviewed available medical records from Clackamas County Community Health Division – Behavioral Health (CBH) and Providence Family Medicine Southeast.    Plaintiff complained of pain "all over," described her previous back surgery, and indicated she has been diagnosed with fibromyalgia.    Tr. 988.    Plaintiff admitted to Dr. Ellison that she was then drinking at least six beers per

day and smoking marijuana, and attended drug and alcohol counseling twice a week.   With respect to plaintiff's back, Dr. Ellison noted that she had mild tenderness in her lumbar spine, with no muscle spasms, had a mildly reduced range of motion, with strongly positive straight leg testing in both legs in supine or sitting positions.   Dr. Ellison diagnosed plaintiff with chronic low back pain with a history of two shaving procedures at L5, and pain radiating into the left leg with some evidence of radiculopathy. Tr. 990.

On May 31, 2011, Dr. Ellison completed a Medical Source Statement, indicating that plaintiff could sit for eight hours, stand for two hours, and walk for one hour total in an eight hour day.   Dr. Ellison indicated that plaintiff could frequently use both hands, could occasionally use her right foot, but never use her left foot, and could occasionally climb stairs and ramps, but never climb ladders, scaffolds, balance, stoop, kneel, crouch or crawl.   Dr. Ellison also opined that plaintiff should avoid unprotected heights and work in a quiet (library) office.   Tr. 994. Dr. Ellison attributed these limitations to plaintiff's chronic back pain, degenerative disc disease, two back surgeries, left leg radiculopathy, bipolar disorder, psychosis, depression and anxiety. Tr. 991.

Because Dr. Ellison's opinion was contradicted,[1] the ALJ was required to provide specific and legitimate reasons to reject his opinion. *Bayliss*, 427 F.3d at 1216. In the decision, the ALJ gave Dr. Ellison's opinion little weight because: (1) it was primarily based on plaintiff's subjective reporting of symptoms, (2) the standing and walking limitations described were inconsistent with his own examination, and (3) the limitations were inconsistent with the lack of limitations on lifting and carrying. I conclude that the ALJ has provided specific and legitimate reasons to reject Dr. Ellison's opinion.

I begin by noting that plaintiff does not challenge the ALJ's negative credibility assessment. It is well-settled that a physician's opinion premised upon a claimant's properly discounted subjective symptoms and limitations may be disregarded. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). The ALJ took note of plaintiff's symptom magnification, inconsistent reporting, noncompliance with treatment, long-standing

---

[1]Dr. Ellison's opinion that plaintiff was limited to two hours of standing and one hour of walking each day is contradicted by non-examining physician Martin Kehrli, M.D., who opined on December 2, 2009, that plaintiff could stand and walk for six hours in an eight hour day. Tr. 617. This opinion was affirmed on reconsideration by Mary Ann Westfall, M.D. Tr. 987. The opinions of Drs. Kehrli and Westfall are supported by substantial evidence.

drug and alcohol dependence, focus on narcotics for pain treatment, and stealing.  Despite that plaintiff does not contest the adverse credibility determination, I have carefully reviewed the record in its entirety, and conclude that the ALJ's determination is readily supported by substantial evidence in the record.

Nevertheless, plaintiff asserts that the ALJ has failed to provide specific and legitimate reasons because Dr. Ellison's opinion rested upon his examination findings, and not plaintiff's subjective symptom reporting.  According to plaintiff, Dr. Ellison's opinion is based on medical signs he observed during the examination, including a strongly positive straight leg test, decreased temperature and pinprick in her left foot, and a little difficulty squatting and rising due to back pain.  I disagree.

First, the ALJ's finding that Dr. Ellison's opinion was based on plaintiff's subjective symptoms is supported by substantial evidence in the record.  While Dr. Ellison did examine plaintiff, the techniques he employed, such as straight leg raising, rising from squatting, and range of motion, rely upon plaintiff's subjective self-reporting, not objective testing.[2]  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)(upholding ALJ's rejection of examining physician's opinion because it was based on

---

[2]For example, plaintiff's numbness and tingling in her extremities is subjectively based, whereas the results of a nerve conduction test would be objectively based.  Dr. Ellison did not perform nerve conduction tests.

claimant's subjective complaints and testing within claimant's control).  Furthermore, during Dr. Ellison's interview, plaintiff reported that she could only walk one block on a level surface, and could climb a flight of stairs.  Plaintiff's report of such extreme limitations is not supported by her medical records following her second back surgery – records that were not reviewed by Dr. Ellison.  Indeed, a review of the record shows that plaintiff sought very limited treatment for her back pain and sciatica following her second back surgery in January 2010.  For example, a June 3, 2010, treatment note authored by Tom Chau, M.D., shows that plaintiff complained of low back pain that "is so bad she wants to go to the ER," yet plaintiff did not have any "emotional correlates of pain" and did not appear in distress.  Tr. 849.  As the ALJ discussed, Dr. Chau indicated that plaintiff's post-operative MRI showed actual improvement with less disc bulge, with no nerve impingement, and that he counseled plaintiff about realistic pain expectations for pain control, but that plaintiff was "dismissive" and "seemed fixated on Vicodin."  Tr. 15, 849.  Based on the lack of contemporaneous record support to substantiate plaintiff's self-reported walking abilities, the ALJ could reasonably conclude that Dr. Ellison's restrictions were based on plaintiff's unreliable statements.

As indicated above, the ALJ's negative credibility assessment was based in part on plaintiff's symptom magnification and

inconsistent reporting to medical providers. Based on the
information presented to Dr. Ellison, the ALJ could reasonably find
that his opinion was largely based on plaintiff's unreliable self-
reports. Because the ALJ's interpretation is rational and is
supported by substantial evidence in the record as a whole, it will
not be disturbed. *See e.g., Molina v. Astrue*, 674 F.3d 1104, 1111
(9th Cir. 2012)(ALJ's findings must be upheld if they are supported
by reasonable inferences drawn from the record). Therefore, I
conclude that the ALJ's first reason, when considered singly or in
combination with the ALJ's second reason, is a specific and
legitimate reason to discount his opinion.

Second, the ALJ reasonably discounted Dr. Ellison's opinion
because the extensive limitations he described, especially standing
and walking, were inconsistent with his own examination findings.
According to plaintiff, Dr. Ellison's findings were not
"essentially normal" as the ALJ described. Plaintiff maintains
that Dr. Ellison's findings, including his diagnosis of
radiculopathy, are significant abnormal medical signs that
justified Dr. Ellison's described sedentary limitation.

Although plaintiff disagrees with the ALJ's characterization
of Dr. Ellison's examination as "normal," I conclude that the ALJ
reasonably could find that the examination results were
inconsistent with the degree of limitation. As described above,
Dr. Ellison's limited evaluation of plaintiff's back and neurologic

symptoms showed numbness and tingling, mild tenderness, no muscle spasm, mildly reduced range of motion, straight leg testing in supine and sitting, and "a little difficulty" rising from squatting.    In contrast, Dr. Ellison found that plaintiff had a normal station, gait, and coordination; normal tandem and heel toe walk; and normal motor strength, muscle bulk and tone with no atrophy.    Given that Dr. Ellison described many of the results as mild and  the exam results were within plaintiff's control, the ALJ reasonably concluded the results were inconsistent with the degree of limitation.    *Tonapetyan,* 242 F.3d at 1149.    Even if I were to conclude differently, the ALJ's determination was reasonable, is supported by substantial evidence in the record, and therefore, must be upheld.    *Baston,* 359 F.3d at 1193.    I conclude that the ALJ's second reason, when combined with the ALJ's first reason, amounts to specific and legitimate support for discounting Dr. Ellison's opinion.

I agree with plaintiff, however, that the ALJ improperly discounted Dr. Ellison's opinion on the ground that the standing and walking restrictions were inconsistent with Dr. Ellison's opinion that plaintiff could lift and carry unlimited weight. Reviewing Dr. Ellison's opinion as a whole, it is evident that Dr. Ellison's lack of lifting restrictions in his Medical Source Statement is an oversight.    Accordingly, I conclude that the ALJ erred in discounting Dr. Ellison's opinion on this basis.    However,

any such error is harmless because the ALJ's first two reasons amount to specific and legitimate reasons, backed by substantial evidence, for discounting Dr. Ellison's opinion.  *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

III. **Dr. Dean**

Plaintiff argues that the ALJ improperly rejected the opinion of examining psychologist Keli J. Dean concerning plaintiff's social functioning.  On May 4 and 6, 2011, Dr. Dean conducted a psychological evaluation on behalf of the Oregon Department of Human Services.  Tr. 1085.  Dr. Dean interviewed plaintiff and reviewed records from CBH and some of plaintiff's medical records dating from 2008.  Dr. Dean also administered the Personality Assessment Inventory (PAI).

During the interview, plaintiff reported to Dr. Dean that she was raped at the age of 18 resulting in pregnancy and suffers related nightmares and flashbacks.  Plaintiff reported that she terminated counseling at CBH because it was an inconvenient location, but Dr. Dean noted that plaintiff's care was closed after plaintiff failed to show for appointments and she was caught stealing from the clinic.

Dr. Dean concluded that plaintiff's PAI scores were invalid due to a high number of inconsistent responses to questions with highly similar content.  Tr. 1090.  Dr. Dean diagnosed plaintiff

with schizoaffective disorder, bipolar type, PTSD, Alcohol Abuse in early full remission by plaintiff's report, cocaine dependence in full sustained remission.    Dr. Dean observed that plaintiff was notably irritable, anxious, and appeared to be experiencing significant distress and severe psychological symptoms based on her self-report, and assigned a GAF of 41.    Dr. Dean noted that plaintiff described a history consistent with depression, mania, and disabling auditory hallucinations.    Tr. 1090.    In conclusion, Dr. Dean indicated the following:

> Based on [plaintiff's] records, information provided during the interview, and her presentation at the evaluation, there are strong indicators to suggest she is not employment ready at this time. In fact, an increase in demands such as training or employment would likely result in further decompensation. [Plaintiff] presents as quite agitated and has little to no tolerance for interacting with others.    She would not likely be amenable to a new employment situation, which required any kind of contact with others including one-to-one job training with a professional job coach. Her psychotic symptoms (i.e. auditory hallucinations and paranoia) make it difficult for her to focus ... .    At this time, it is recommended that [plaintiff's] DHS plan focus solely on treatment.    She is not a good candidate for participation in the JOBS program ... .

Tr. 1091.

On May 20, 2011, Dr. Dean completed a Mental Residual Functional Capacity (MRFC) Report, indicating that plaintiff had marked limitations in several categories, including: maintaining attention and concentration for extended periods; maintaining attendance; working in proximity to others without being distracted; completing a workweek without interruptions from

psychological symptoms; the ability to act appropriately with the public; the ability to accept instructions and criticism from supervisors; the ability to travel using public transportation; and the ability to set realistic goals.  Tr. 1093-94.

In the instant proceeding, plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Dean.  According to plaintiff, the ALJ failed to include in the RFC plaintiff's social functioning limitations found by Dr. Dean, specifically her inability to interact with supervisors and co-workers.  Plaintiff's arguments fail for two reasons.

First, the ALJ provided numerous reasons for discounting Dr. Dean's opinion: (1) it was primarily based on plaintiff's subjective reporting of her symptoms; (2) it was inconsistent with the information plaintiff provided to Dr. Duvall; and (3) it was inconsistent with the record as a whole.  An ALJ may properly discount a physician's opinion premised upon a plaintiff's discredited subjective complaints.  *Tommasetti*, 533 F.3d at 1038. Significantly, plaintiff has not challenged the ALJ's credibility determination in this proceeding.  Having carefully reviewed the record, the ALJ's unchallenged credibility determination is readily supported by substantial evidence, and therefore, I conclude that the ALJ has provided a specific and legitimate reason for discounting Dr. Dean's opinion.

15 - OPINION AND ORDER

Additionally, the ALJ legitimately rejected Dr. Dean's opinion because it was premised on vastly inconsistent reporting by plaintiff. As the ALJ detailed, plaintiff reported different information to Dr. Dean than she conveyed to Dr. Duvall concerning a sexual assault, her substance abuse, and alleged hallucinations. The discrepancies are supported by substantial evidence in the record, and the ALJ could reasonably conclude that Dr. Dean's opinion was premised on plaintiff's contradictory reports and legitimately reject it. *See Molina*, 674 F.3d at 1111 (ALJ's rational interpretation of evidence must be upheld if supported by inferences reasonably drawn from the record). Thus, the ALJ provided another specific and legitimate reason for rejecting the opinion of Dr. Dean, and therefore, I conclude the ALJ did not err.

The ALJ also discounted Dr. Dean's opinion because the GAF score of 41 was inconsistent with the record as a whole. I disagree. Plaintiff's GAF scores have ranged from 40 to 56. Tr. 356, 974. Thus, I conclude that the ALJ erred in discounting Dr. Dean's opinion on this basis. Any such error is harmless because the ALJ provide other specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Dean's opinion. Therefore, I find no harmful error in the ALJ's assessment of Dr. Dean's opinion. *Carmickle*, 533 F.3d at 1162.

////

////

16 - OPINION AND ORDER

IV.  **Dr. Duvall**

On November 3, 2011, Ronald D. Duvall, Ph.D., conducted a neuropsychological screening to assess plaintiff's eligibility for disability benefits.  Dr. Duvall conducted an interview, reviewed many of plaintiff's medical records, including Dr. Dean's evaluation, and conducted several neuropsychological tests, including the Wechsler Adult Intelligence Scale-IV (WAIS-IV), Wechsler Memory Scale-III (WMS-III), Trail-Making Tests A&B, Reitan Aphasia Screening Test, Test of Memory Malingering (TOMM), and the Minnesota Multiphasic Personality Inventory-II (MMPI-2).

Dr. Duvall noted that plaintiff reported numerous, significant inconsistencies between his assessment and Dr. Dean's assessment conducted just six months previously.  Tr. 1201.  For example, plaintiff reported to Dr. Dean that she was sexually assaulted causing flashbacks and nightmares.  However, plaintiff denied being a victim of sexual assault when Dr. Duvall inquired.  On the WAIS-IV, Dr. Duvall found plaintiff to be of low-average to borderline, and that her WSM-III test results were consistent with her I.Q. scores.  Notably, Dr. Duvall found plaintiff's MMPI-2 scores invalid, "due to [plaintiff's] exaggeration of her personal problems."  Tr. 1207.  Dr. Duvall diagnosed plaintiff with Depression, Bipolar Disorder NOS, Panic Disorder with Agoraphobia, Alcohol Aubse, reportedly in sustained remission, and a History of Polydrug Abuse vs. Dependence.

Dr. Duvall made the following findings:

> Even with the questions regarding her exaggeration on the
> MMPI-2, and her discrepant reports between this
> examination and her May, 2011, psychological evaluation
> by Dr. Dean, the problems presented by [plaintiff] still
> represent significant barriers to competitive employment.
> She is emotionally unstable; she is prone to angry
> outbursts and aggression toward others; she reported
> persistently high levels of anxiety and panic attacks;
> she has a relatively short term of abstinence from
> serious addictions to alcohol and drugs. Her
> intelligence is low-average to borderline. She has no
> drivers license and has trouble managing other ADLs
> independently, relying on her roommate at present.

Tr. 1209.

On November 3, 2011, Dr. Duvall completed a Medical Source
Statement, in which he notes that plaintiff is not limited in her
ability to understand, remember, and carry out simple instructions,
and is mildly limited in her ability to make simple work-related
decisions; she is moderately limited in her ability to understand,
remember, and carry out complex instructions due to her limited
intelligence and anxiety that interferes with more complex tasks.
Tr. 1197. Dr. Duvall also indicated that plaintiff is markedly
limited in her ability to interact appropriately with the public,
supervisors, and co-workers, and moderately limited in her ability
to respond appropriately to usual work situations and changes in
routine due to her borderline personality disorder with poor affect
regulation, anger outbursts, and history of aggressive behaviors.
Tr. 1198.

18 - OPINION AND ORDER

In the decision, the ALJ thoroughly discussed Dr. Duvall's opinion, and credited Dr. Duvall's opinion that plaintiff was capable of simple tasks and was an inconsistent reporter because those findings were consistent with the record as a whole. Additionally, the ALJ gave Dr. Duvall's opinion that plaintiff has "significant barriers to employment" and marked limitations with social functioning less weight because those findings were based on plaintiff's subjective reporting, and was inconsistent with plaintiff's work history, demonstrating that plaintiff could work with others in the past.  Tr. 22.

In the instant proceeding, plaintiff complains that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Duvall's opinion concerning plaintiff's marked limitations in social functioning.  According to plaintiff, the ALJ failed to include plaintiff's limitations in her inability to interact with supervisors and co-workers found by both Drs. Dean and Duvall into the RFC.  Plaintiff also argues that because all of plaintiff's mental health care providers expressed that she has difficulties with supervisors, the RFC omitting this limitation is not supported by substantial evidence.  Based on my careful review of the record, I agree that the ALJ has not provided specific and legitimate reasons.

Generally speaking, an ALJ provides sufficient reasons for discounting a physician's opinion when that opinion is based upon

a plaintiff's discredited self-reports.  However, in this case, Dr. Duvall considered plaintiff's exaggeration and inaccurate reporting and nevertheless concluded that her severe psychological symptoms presented barriers to employment.  In this regard, Dr. Duvall premised his opinion on records he reviewed and objective testing he conducted, nothwithstanding plaintiff's admittedly incredible self-reports.  To be sure, the records Dr. Duvall references show plaintiff struggling with anger and mood stability, as well as ongoing alcohol dependence.  Therefore, I conclude that based on the record before me, simply pointing to plaintiff's discredited subjective symptoms was not a specific and legitimate reason to reject Dr. Duvall's opinion.

Additionally, plaintiff's work history is not so extensive that this basis alone constitutes a specific and legitimate reason to reject Dr. Duvall's opinion.  Because Dr. Duvall also opined that plaintiff has marked limitations working with supervisors that was not included in the RFC, the error was not harmless. Accordingly, the ALJ has erred.

## V.   Remand

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits.  *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  The issue turns on the utility of further proceedings.  A remand for an award

of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. *Vasquez*, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart*, 340 F.3d 873, 876 (9th Cir. 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Commissioner of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

On this record, I conclude that outstanding issues must be resolved before a final determination of disability can be made. Dr. Duvall opined that plaintiff's emotional instability, anger

outbursts and aggression, persistent anxiety, and short term abstinence from alcohol and drugs presented "significant barriers to competitive employment." Tr. 1209. Dr. Duvall also indicated that plaintiff has marked limitations in interacting appropriately with supervisors. Tr. 1198. The VE testified that if a person had marked difficulty dealing with supervisors, competitive employment would be eliminated. Tr. 49. I decline to credit Dr. Duvall's testimony because reviewing the record as a whole creates serious doubt as to whether plaintiff is, in fact, disabled. *Garrison v. Colvin*, ____ F.3d ___, 2014 WL 3397218, *21 (9th Cir. July 14, 2014).

As noted above, the ALJ's adverse credibility determination was not challenged. Moreover, the record is replete with references to plaintiff's history of drug and alcohol abuse or dependence. In discrediting plaintiff, the ALJ discussed that plaintiff has consistently minimized the seriousness of her alcohol abuse. Indeed, Dr. Duvall expressed concern about plaintiff's relatively short period of sobriety at the time he rendered his opinion. Plaintiff testified at the January 5, 2012 hearing that she had not used alcohol in one year, had received a DUI the previous year, but had given up marijuana only two months earlier. Tr. 40. Here, the ALJ did not find plaintiff disabled, and thus did not reach the question of materiality concerning her alcohol or drug use. *See generally Parra v. Astrue*, 481 F.3d 742, 746-47 (9th

Cir. 2007)(discussing the required drug and alcohol analysis under
20 C.F.R. § 404.1535); *Bustamonte v. Massanari*, 262 F.3d 949, 955
(9th Cir. 2001)(claimant's mental impairments must be evaluated
separately from drug and alcohol analysis).   On the record before
me, outstanding issues remain that must be resolved before a
disability determination can be made.

Based on the foregoing, I exercise discretion under *Connett*
and conclude a remand for further proceedings consistent with this
Opinion and Order is required to permit the ALJ: (1) to reconsider
the opinion Dr. Duvall; (2) to consider whether any new findings
made by the ALJ alter the evaluation of plaintiff's RFC or affect
the decision as to whether plaintiff is capable of performing other
work that exists in significant' numbers in the national economy,
with assistance of a vocational expert if necessary; and (3) if
plaintiff is found to be disabled, the ALJ must determine whether
plaintiff's drug or alcohol addiction is a contributing factor that
is "material" to the finding of disability.

////

////

////

////

////

////

////


23 - OPINION AND ORDER

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this __13__ day of AUGUST, 2014.

_Malcolm F Marsh_
Malcolm F. Marsh
United States District Judge